UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

|  |  |  |
|---|---|---|
| TEAMSTERS LOCAL 631, | ) ) ) | 2:09-cv-01516-LRH-PAL |
| Plaintiff, | ) ) |  |
| v. | ) ) | ORDER |
| REPUBLIC SILVER STATE DISPOSAL, INC.; REPUBLIC DUMPCO, INC., | ) ) ) |  |
| Defendants. | ) ) |  |

Before the court is defendants Republic Silver State Disposal, Inc. and Republic Dumpco, Inc.'s (collectively "Republic") motion to dismiss filed on January 8, 2010. Doc. #21[1]. Plaintiff, the International Brotherhood of Teamsters, Local 631 ("Teamsters"), filed an opposition on February 2, 2010. Doc. #25. Thereafter, Republic filed a reply on February 22, 2010. Doc. #29.

**I.      Facts and Procedural History**

The Teamsters is the collective bargaining agent for certain employees of Republic. On July 26, 2007, the Teamsters and Republic entered into a collective bargaining agreement. The agreement provided for a pay and benefits increase of $1.50 per hour, per year, for the four years the agreement was operative. The agreement provided that there would be two wage increases during each year: one in June consisting of a $0.35 per hour raise and another in December

---

[1] Refers to the court's docket number.

1   consisting of a $0.75 per hour raise. The remaining $0.40 increase was allocated to the Health and

2   Welfare fund.  The parties further agreed that the health and welfare allocation would be converted

3   to a wage increase to the extent that the allocations exceeded premium increases for the health and

4   welfare plan during the year.

5           In June 2008, the first effective increase date, the Teamster leadership notified Republic that

6   premiums were not being increased for 2008 and requested that the $0.40 per hour health and

7   welfare allocation be converted into a $0.15 per hour wage increase to be paid to employees and a

8   $0.25 per hour pension allocation. Republic agreed with the re-allocation and began paying an

9   additional $0.25 per hour to the pension plan.

10          In April 2009, the Teamsters, under new leadership not involved in either the 2007

11  collective bargaining agreement negotiations or the 2008 re-allocation, filed a grievance with

12  Republic relating to Republic's payment of $0.25 per hour to the pension plan rather than

13  converting the $0.25 to wages as provided by the bargaining agreement. Republic did not process

14  the April wage grievance nor submit to arbitration.

15          Ultimately, the Teamsters filed a complaint to compel arbitration against Republic on

16  August 13, 2009. Doc. #1. Thereafter, Republic filed the present motion to dismiss arguing that the

17  district court is without jurisdiction to consider the Teamster's complaint. Doc. #21.

18  **II.     Legal Standard**

19          The NLRB is vested with primary jurisdiction over matters concerning an unfair labor

20  practice. *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982); *United Ass'n of Journeymen &*

21  *Apprentices v. Valley Eng'rs*, 975 F.2d 611, 613 (9th Cir. 1992). As a general rule, district courts

22  do not have jurisdiction over activity which is arguably an unfair labor practice as defined in § 7 or

23  § 8 of the National Labor Relations Act ("NLRA"), found at 29 U.S.C. § 158. *Kaiser*,

24  455 U.S. at 83. Accordingly, district courts must refuse to exercise jurisdiction over claims falling

25  solely within the NLRB's primary jurisdiction. *Valley Eng'rs*, 975 F.2d at 613 (citing *Hotel &*

26

2

1  *Restaurant Employees Union v. Marriot Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992)).

2  However, pursuant to § 301 of the Labor Management Relations Act ("LMRA"), found at

3  29 U.S.C. § 185, a district court is vested with jurisdiction over suits alleging a violation of the

4  collective bargaining agreement. 29 U.S.C. § 185(a). Section 301 extends not only to "claims

5  founded directly on rights created by collective bargaining agreements, [but] also [to] claims which

6  are substantially dependent on analysis of a collective bargaining agreement." *Adkins v. Mireles*,

7  526 F.3d 531, 539 (9th Cir. 2008). Accordingly, a district court has jurisdiction over labor disputes

8  involving primarily a question of contract interpretation. *Nelson v. International Brotherhood of*

9  *Electrical Workers, Local Union No. 46*, 899 F.2d 1557, 1564 (1990) (citing *IBEW Local 532,*

10  *Brink Construction Co.*, 825 F.2d 207, 213-14 (9th Cir. 1987)); *see also*, *Valley Eng'rs*, 975 F.2d at

11  613 (citing *Brotherhood of Teamsters v. California Consolidators, Inc.*, 693 F.2d 81, 83 (9th Cir.

12  1982).

13  **III.    Discussion**

14  To assert jurisdiction under section 301, "all that is required . . . is that the suit be based on

15  an alleged breach of contract between an employer and a labor organization and that the resolution

16  of the lawsuit be focused upon and governed by the terms of the contract." *Lumber Production*

17  *Industrial Workers Local #1054 v. West Coast Industrial Relations Ass'n, Inc.*, 775 F.2d 1042,

18  1046 (9th Cir. 1985).  However, district courts must continue to defer to the NLRB when, on close

19  examination, section 301 cases are actually disguised unfair labor practice cases that fall within the

20  NLRB's primary jurisdiction. *Valley Eng'rs*, 975 F.2d at 613-14. In determining whether a district

21  court should exercise section 301 jurisdiction, a court should determine whether the essential issues

22  in the action are primarily contractual, or primarily something else. *Id*. at 614.

23  Republic argues that the Teamster's complaint is essentially one for unfair labor practices

24  rather than breach of contract. Republic argues that the complaint alleges that Republic unilaterally

25  repudiated the wage provisions of the agreement. Such a unilateral repudiation of the bargaining

26  3

1  agreement, Republic argues, is an unfair labor practice which divests the court of jurisdiction in

2  accordance with *Oak Cliff-Golman Baking Company and Bakery and Confectionary Workers*

3  *International Union of America, AFL-CIO, Local No. 111*, 207 N.L.R.B. 1063 (1973).

4          In *Oak Cliff-Golman*, an employer unilaterally cut pay in violation of the collective

5  bargaining agreement. The Union brought an action to the NLRB. The employer argued that the

6  NLRB was without jurisdiction because the dispute was over a violation of the contract. The NLRB

7  disagreed stating that:

8          "It cannot be gainsaid that an employer's decision in midterm of a contract to pay its
           employees for the remainder of the contract's terms at wage rates below those provided in
9          the collective-bargaining agreement affects what is perhaps the most important element of
           the many in the employment relationship . . . Because so substantial a portion of the
10         remaining aspects of a bargaining contract are dependent upon the wage rate provision, it
           seems obvious that a clear repudiation of the contract's wage provision is not just a mere
11         breach of the contract, but amounts, as a practical matter, to the striking of a death blow to
           the contract as a whole, and is thus, in reality, a basic repudiation of the bargaining
12         relationship."

13  *Oak Cliff-Golman*, 207 N.L.R.B. 1063; *see also, Mexico Symphony Orchestra, Inc. and*

14  *Musicians Association of Albuqurque, Local 618, American Federation of Musicians, AFL-CIO*,

15  335 N.L.R.B. 896 (2001) ("It is well established that the failure to make timely contractually

16  required payments without consent of the Union constitutes a unilateral modification of the terms

17  of the collective-bargaining agreement in violation of section 8(a)(1) and (5) of the act."). Because

18  the complaint alleges that Republic did not pay the required wage under the agreement, Republic

19  argues that under *Oak Cliff-Golman*, the Teamsters have alleged an unfair labor practice.

20          However, the court finds that the present suit is a contract dispute arising from the specific

21  provisions of the collective bargaining agreement, namely the provision providing that excess funds

22  from the health and wage fund would be distributed as wages. The Teamster's allege that Republic

23  paid a portion of the health and welfare fund to the pension plan rather than disbursing that money

24  as additional wage increases. These allegations arise directly from the collective bargaining

25  agreement and are "substantially dependent on analysis of [the] collective bargaining agreement."

26

*Adkins*, 526 F.3d at 539.

Additionally, the court finds that Republic's reliance on *Oak Cliff-Golman* is misplaced. The actions of Republic in this instance are quite dissimilar from the unilateral decision of the employer in *Oak Cliff-Golman* to pay its employees less than the collective bargaining agreement. Here, Republic has paid all the stated wage increases in the collective bargaining agreement and has alleged that Teamster leadership requested the payment of $0.25 to the pension plan in lieu of a wage increase. Thus there has been no unilateral decision by Republic to pay less than the stated amount in the collective bargaining agreement. Without a unilateral action on Republic's part that eviscerates the entire wage provisions of the agreement, there is no unfair labor practice divesting the court of jurisdiction. *See Oak Cliff-Golman,* 207 N.L.R.B. 1063.

Accordingly, the court finds that the present action is one primarily rooted in contract rather than unfair labor practices and that jurisdiction is proper under section 301. See *Lumber Production Industrial Workers Local #1054*, 775 F.2d at 1046.

IT IS THEREFORE ORDERED that defendant's motion to dismiss (Doc. #21) is DENIED.

IT IS SO ORDERED.

DATED this 5th day of March, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

5